STATE OF MAINE                          SUPERIOR COURT
                                        CIVIL ACTION
KENNEBEC, ss.                           DOCKET NO. AP-06-53

                                        ~AKC-KEN - 3/03/2007


WORLDWIDE LANGUAGE
RESOURCES, INC.,

        Petitioner

    v.                                  **DECISION ON APPEAL**

MAINE UNEMPLOYMENT
INSURANCE COMMISSION,

        Respondent


    This matter comes before the court for review pursuant to 5 M.R.S. § 11001 *et seq.*

and M.R. Civ. P. 80C. The final agency decision on appeal is a decision of July 14, 2006,

by the Maine Unemployment Insurance Commission ("Commission"). The issue

presented in that decision is whether the services provided by an individual for

petitioner Worldwide Language Resources, Inc. ("Worldwide") constituted

"employment" pursuant to 26 M.R.S. § 1043(11), and, if so, whether Worldwide was

therefore liable for unemployment taxes pursuant to 26 M.R.S. § 1221. Therefore, the

issue is not whether an individual who has made a claim for unemployment benefits is

entitled to receive them, rather it is whether the entity for which the person provided

his services was an "employer."

### Standard of Review

    When the decision of an administrative agency is appealed pursuant to M.R. Civ.

P. 80C, the court reviews the agency's decision directly for abuse of discretion, errors of

law or findings not supported by the evidence. *Centamore v. Dept. of Human Services*, 664

A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis

of the entire record before it, the agency could have fairly and reasonably found the

facts as it did." *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551, 555. The focus on appeal is not whether the court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence which supports the result reached by the agency.

### Facts

Included within the Commission's very detailed six and a half page decision are two pages of descriptive findings concerning the nature of Worldwide's business and its relationship to a specific translator. These findings are not challenged by Worldwide, though the ultimate finding that Worldwide is an employer for purposes of the unemployment tax is the critical issue on appeal. These detailed findings will not be repeated, but may be summarized as follows.

Worldwide is a company headquartered in Rumford, Maine, in the business of providing linguistic and translation services to clients, primarily the United States military, throughout the world. In addition to the staff based in Maine, Worldwide engages the services of "linguists"; American citizens who speak various languages for which translation and interpretation services are needed by Worldwide's clients. The linguists who work in the United States have generally been classified by Worldwide as "employees", and unemployment tax has been paid for them. The linguists recruited to work abroad, including in war zones, have been classified as subcontractors and Worldwide does not pay taxes for them. Commission staff had previously agreed with this classification by Worldwide since although Worldwide is based in Maine, the work performed by the translators was done outside of the State. However, at some point in time the Commission staff realized that the services in question would nevertheless be considered employment if the employer's principal place of business was located in Maine and the services were performed outside the United States. 26

M.R.S. § 1043(11)(A-1)(4)(a). The Commission staff then took another look at the status of Worldwide's oversea's linguists.

The present test case for the status of Worldwide as an employer concerns an individual born in Iraq, living in the United States outside of Maine. This person grew up speaking Arabic but is also fluent in English. The gentleman apparently had been employed in the restaurant trade, but responded to an advertisement by Worldwide seeking Arab linguists to provide services to the military in Iraq. The application was accepted and the applicant signed a contract with Worldwide titled, "Independent Subcontractor Agreement." Predeployment training was provided by the military, as was his equipment. Upon arrival at the destination chosen by the military, he was met by a site manager from Worldwide, who acted as a sort of "concierge" catering to the needs of the translators. However, all further control and management of the translator was done by military personnel. The translator in question worked in Iraq until the military advised Worldwide that it could no longer permit him to provide his services "down range" (in hostile, or "non-Green Zone" areas) for reasons that are not relevant to the present case. Upon returning to the United States, the translator applied for further work with Worldwide and a competitor, but also applied for unemployment benefits.

## Discussion

The Employment Security Law defines employment very broadly to presumptively include any "services performed by an individual for remuneration." *Vector Marketing Corp. v. Unemployment Insurance Comm.*, 610 A.2d 272, 274 (Me. 1992). Worldwide has the burden of refuting the presumption that services performed here constitute employment. To rebut this statutory presumption, Worldwide has the burden of proving that its relationship with the claimant satisfies all three prongs of the so-called ABC test. *McPherson Timberlands v. Maine Unemployment Insurance Comm.*,

1998 ME 177, ¶ 7, 714 A.2d 818, 821. The ABC test is detailed in the Employment Security Law at 26 M.R.S. § 1043(11)(E), as follows:

> Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the bureau that:
> (1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact;
> (2) Such service is either outside the usual course of the business for which service is performed, or that such service is performed outside of all places of business of the enterprise for which such services is performed; and
> (3) such individual is customarily engaged in an independently established trade, occupation, profession or business.

The Commission decided that Worldwide failed to meet its burden on any of the three parts of the ABC test.

Of the three tests, the first – freedom of control or direction – presents Worldwide's strongest arguments. In Worldwide's favor are the facts that the translator provided his services directly to the military at locations designated by the military; Worldwide had no right to interfere in or influence such decisions; Worldwide provided no quality control or quality assurance for the services; no services were provided on Worldwide's premises; Worldwide did not have knowledge of any "down range" locations where the services were needed; and the translator did not report on his progress or accept supervision over his work from Worldwide. On the other hand, the Commission noted that Worldwide retained certain rights to control its translator, even if those rights were not exercised. As examples of such right to control, the Commission points to Worldwide's ability to terminate the contract, a monetary refusal fee, forfeiture of bonuses or pay and right to refuse travel compensation. Also, determination of the length of the contract, determination of misconduct while on duty and a noncompete provision present control elements. Although it probably is a close

call, there are these facts in the record to support the Commission's decision on this prong of the test despite the almost total lack of control over the actual performance of the translating duties.

Although the Commission's decision on the first or "control" prong is close, it is of little consolation to Worldwide since it must prove all three prongs and clearly fails on the second and third ones. The second prong concerns the usual course of business of the punitive employer and the location of its places of business and the places the services are performed. The services the translator provided are exactly the type of services Worldwide is in the business of facilitating and they are provided where the clients wish to have them provided. Worldwide's place of business is not the world as a whole, but the specific places in the world where it sends its linguists and provides support through its site managers. Furthermore, the Commission was correct in its analysis distinguishing a previous Superior Court decision (*Alley v. Maine Unemployment Insurance Comm.*, 2005 W.L. 2723188 (Me. Super.)) where incidental referrals of other court reporters was held not to be employment.

Finally, with regard to the third prong the Commission was also not mistaken in its interpretation that the inquiry should look at what the individual did prior to his employment to determine whether he was "customarily" engaged in an independently established trade. As used in the statute, the word "customarily" requires an examination of what the individual's previous occupations have been. In this case, although the individual was bilingual, there is no evidence that he had ever used this skill professionally, and the only known occupational history is as a restaurant worker. Furthermore, as noted by the Commission, even if the newly minted translator attempted to use these abilities professionally after his termination by Worldwide, the

"noncompete" provision in his contract would have seriously limited the availability of such work.

In light of the foregoing, the court concludes that there is substantial evidence of record to support the findings and conclusions of the Commission, at least as to the second and third prongs of the ABC test, that there was no abuse of discretion, and there were no errors of law by the Commission. Therefore, the entry will be:

The decision of the Commission is AFFIRMED.

Dated: March 23, 2007

S. Kirk Studstrup
Justice, Superior Court

Date Filed __8/14/06_____ _____Kennebec_____ Docket No. ___AP06-53_____
County

Action _____Petition for Review_____
80C

# J. STUDSTRUP

Worldwide Language Resources, Inc.          vs.          Maine Unemployment Insurance Commission

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Jeffrey A. Meyers, Esq.<br>99 Middle Street<br>Manchester, NH 03101<br>-Christopher Hawkins, Esq. | Kelly L. Turner, AAG<br>Elizabeth J. Wyman, AAG<br>6 State House Station<br>Augusta, Maine 04333-0006 |

| Date of Entry | |
|---|---|
| 8/14/06 | Petition for Review, filed. s/Meyers, Esq. |
| 8/29/06 | Letter entering appearance, filed. s/Turner, AAG |
| 9/19/06 | Motion for Enlargment of Time to File the Administrative Record, filed. s/Turner, AAG<br>Proposed Order, filed. |
| 9/21/06 | ORDER, Mills, J.<br>It is hereby ordered, upon Motion of the Respondent and without objection by the Petitioner, that the deadline for filing the administrative record is enlarged to October 18, 2006.<br>Copies mailed to attys. of record. |
| 10/18/06 | Administrative Record, filed. s/Turner, AAG |
| 10/24/06 | Notice of briefing schedule mailed to attys of record. |
| 11/27/06 | Brief of Petitioner, Worldwide Language Resources, Inc. in Support of Administrative Appeal, filed. s/Meyers, Esq. |
| 12/27/06 | Brief of Respondent Maine Unemployment Insurance Commission, filed. s/Wyman, AAG |
| 1/12/07 | Reply of Petitioner Worldwide Language Resources, Inc. to Brief of Respondent Maine Unemployment Insurance Commission, filed. s/Meyers, Esq. |
| 1/30/07 | Notice of Appearance, filed. s/Hawkins, Esq. |
| 2/1/07 | Assented-To Motion For Admission Pro Hac Vice of Christopher T. Vrountas, Esq. s/Meyers, Esq. (filed 01/31/07)<br>Proposed Order, Exh. A (Affidavit of Christopher T. Vrountas), and Exh. B (Affidavit of Leonard D. Zamansky). |
| 2/7/07 | Hearing had on oral arguments, Hon. Kirk Studstrup (no courtroom clerk) Matter taken under advisement. |